IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01528-REB-KLM

NAYLOR FARMS, INC.,

    Plaintiff,

v.

ANADARKO OGC COMPANY, as successor in interest to Union Pacific Oil & Gas Company, f/n/a Amax Oil & Gas, Inc.,
QUESTAR EXPLORATION & PRODUCTION COMPANY,
GPM GAS CORPORATION,
DUKE ENERGY FIELD SERVICES, INC., and
DCP MIDSTREAM, LP,

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Motion to Quash Subpoena and for Protective Order** [Docket No. 1; Filed June 10, 2011] (the "Motion") filed by Defendant DCP Midstream, LP (hereinafter, "DCP") and DCP's President and Chief Executive Officer ("CEO"), Mr. Thomas C. O'Connor (hereinafter, "O'Connor"). This case was filed in this District for the limited purpose of adjudicating the propriety of a deposition subpoena issued here. The subpoena pertains to an underlying case, No. 5:08-cv-00668-R (hereinafter, "the Oklahoma Case"), now pending in the United States District Court for the Western District of Oklahoma. The Oklahoma Case involves disputes regarding natural gas purchase contracts between owners of mineral and royalty interests, including Plaintiff, and Defendants.

On May 9, 2011, Plaintiff issued a Subpoena to Testify at a Deposition in a Civil Action [Docket No. 1-1] (the "Subpoena") requiring O'Connor to appear for a deposition on June 16, 2011 at 9:00 a.m. at an office in Denver, Colorado. On May 11, 2011, pursuant to the agreement of counsel for DCP and counsel for Plaintiff, the Subpoena and an accompanying check for $15.00 were accepted by counsel for DCP on behalf of O'Connor. *Motion* [#1] at 2-3. O'Connor and DCP now seek to quash the Subpoena for the following reasons: (1) the Subpoena was not served in compliance with Fed. R. Civ. P. 45(b)(1) and 30(b)(1), *id.* at 4-5; and (2) O'Connor should be protected from the burdens of a deposition pursuant to the "apex doctrine" because he is "'removed from the daily subjects of the matter in litigation'" and "he has no 'truly unique' personal knowledge of the matter in dispute," *id.* at 8 (quoting *EchoStar Satellite, LLC v. Splash Media Partners, L.P.*, No. 07-cv-02611-PAB-BNB, 2009 WL 1328226, at *2 (D. Colo. May 11, 2009) (unreported decision)). The Court addresses the latter argument first.

Under what has become known as the "apex doctrine," the Court may protect a high level corporate executive from the burdens of a deposition when any of the following circumstances exist: (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought from the executive can be obtained from another witness; (3) the information sought from the executive can be obtained through an alternative discovery method; or (4) sitting for the deposition is a severe hardship for the executive in light of his obligations to his company.[1] *See EchoStar*, 2009 WL 1328226, at

---

[1] While the apex doctrine has been recognized and repeatedly applied in this District, *see infra* n.2, some other district courts have declined to recognize it as a distinct rule. *See, e.g.*, *Turner v. Novaritis Pharm.*, No. 10-0175, 2010 WL 5055828, at *3 (E.D. La. Dec. 2, 2010) (unreported decision) ("There is no Fifth Circuit law which applies the 'apex doctrine' strictly

*2. The apex doctrine developed as courts recognized that "high ranking and important executives can easily be subjected to unwarranted harassment and abuse" and should therefore be protected. *Id.* (internal quotation omitted); *see also Celerity, Inc. v. Ultra Clean Housing, Inc.*, No. C05-04374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (unreported decision) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment.").

This Court has not clearly established which party bears the ultimate burden of persuasion when a high level executive invokes the apex doctrine. In *EchoStar*, the Court appeared to adopt the following burden shifting scheme.[2] First, the party seeking to

---

prohibiting the deposition of high level executives."); *Gauthier v. Union Pac. R.R. Co.*, No. 1:07-cv-12 (TH/KFG), 2008 WL 2467016, at *4 n.2 (E.D. Tex. 2008) ("To the extent that the Court holds that the plaintiffs should engage in other means of discovery before obtaining the requested depositions [of executives], the undersigned specifically reaches that conclusion based upon the facts of this case, the Federal Rules of Civil Procedure, and applicable federal caselaw, not the more specific . . . 'apex doctrine.'"); *Van Den Eng v. Coleman Co., Inc.*, No. 05-MC-109-WEB-DWB, 2005 WL 3776352, at *2 (D. Kan. Oct. 21, 2005) (unreported decision) ("[W]hile the state court cases, interpreting state law, cited by [the defendant] may support [the] assertion that the Apex doctrine is a mandatory threshold inquiry, the court is unaware of any federal case, interpreting the Federal Rules of Civil Procedure, that has adopted such an absolute threshold test that must be met before Apex Officials can be deposed. . . . [M]otions for protective orders for Apex Officials are treated under the same standards as any other protective order, while taking into consideration special factors that may apply to such officials."). These courts find that because the language of Fed. R. Civ. P. 26(c)(1) is broad, i.e., "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," there is no need to apply a special doctrine when determining the propriety of deposing a high level executive.

[2] The *EchoStar* decision does not expressly adopt "burden shifting." However, a burden shifting scheme is implied, and such a scheme is the most logical way to reconcile statements in the decision that otherwise appear inconsistent, e.g., the statement that "the party seeking discovery must first demonstrate that the proposed deponent has unique personal knowledge" and the later statement that "the executive must demonstrate by evidence that he has no unique personal knowledge." *EchoStar*, 2009 WL 1328226, at *2. The Court has located only two other decisions from this District discussing the apex doctrine: *Elvig v. Nintendo of America, Inc.*, No. 08-cv-02616-MSK-MEH, 2009 WL 2399930, at *2-3 (D. Colo. Jul. 31, 2009) (unreported decision), and *Peiker Acustic, Inc. v. Kentucky*, No. 10-cv-02083-REB-MJW, 2011 WL 1344238, at *1 (D. Colo.

depose an executive bears an initial burden of making some showing that the executive has "unique personal knowledge" of some relevant issues. *EchoStar*, 2009 WL 1328226, at *2 ("Where . . . a party seeks to depose a high level executive removed from the daily subjects of the matter in litigation, the party seeking discovery must first demonstrate that the proposed deponent has 'unique personal knowledge' of the matters in issue." (quoting *Baine v. Gen. Motors. Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991))). Upon such a showing, the burden shifts to the executive to demonstrate by evidence that he in fact has no unique personal knowledge or that there exists one of the other three circumstances under which requiring him to sit for a deposition is inappropriate. *See id.* (stating that "a court may protect a high executive officer from the burdens of a deposition *upon a showing*" that one of the four apex doctrine circumstances exists (emphasis added)); *id.* ("Generally, the executive seeking to avoid being deposed must demonstrate by evidence that he has no unique personal knowledge." (citing *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 483 (10th Cir. 1995); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D. R.I. 1985))).

To avoid any doctrinal confusion, the Court now unequivocally adopts the burden shifting scheme set forth above and holds that the ultimate burden of persuasion lies with the executive invoking the apex doctrine. This rule is suggested in *EchoStar*, *see supra* n.2, and it is consistent with the general rule that a party seeking protection from discovery bears the ultimate burden of establishing good cause for such protection. *See id.* at *3 (implying that the ultimate burden of persuasion lies with the executive invoking the apex

---

Apr. 8, 2011) (unreported decision). Neither case addresses the proper placement of the ultimate burden of persuasion. The Court has not located any decisions of the Court of Appeals for the Tenth Circuit that expressly mention the apex doctrine.

doctrine by stating in conclusion that "[the executive] has satisfied *his* burden and is entitled to a protective order precluding his deposition at this time" (emphasis added)); *id.* at *2 ("The burden normally is on the party seeking protection from discovery to establish good cause." (citing Fed. R. Civ. P. 26(c)(1))); *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000) ("The party seeking a protective order has the burden to demonstrate good cause.").

In this case, O'Connor invokes the apex doctrine and contends that (1) he has no truly unique personal knowledge that is relevant to the issues in the case, (2) "there are other persons within DCP who have as much (or more) knowledge" regarding issues relevant to the Oklahoma case and DCP's "perennial objective of obtaining gas supplies for [its] business," *Motion* [#1] at 8-9, and (3) sitting for a deposition would be a severe hardship because it would impinge upon his obligations as President and CEO of DCP. Because O'Connor has invoked the doctrine, Plaintiff bears the initial burden of making some showing that O'Connor has some relevant unique personal knowledge. Plaintiff acknowledges that the contracts at issue in the Oklahoma Case were signed before O'Connor's tenure as DCP's CEO and that these contracts were "negotiated and [are] administered by personnel in DCP's Tulsa office." *Response* [#4] at 2. Despite these facts, Plaintiff asserts that O'Connor has unique personal knowledge of issues relevant to the contract disputes because his "name appears as the author of" a PowerPoint presentation [Docket No. 4-2] that purportedly contains a statement about the quality of raw natural gas at wellheads serviced by DCP. *Id.*

The Court finds that Plaintiff's submission of the PowerPoint presentation is an insufficient demonstration that O'Connor has unique personal knowledge relevant to the Oklahoma Case. An executive has "unique personal knowledge" only if he has information

that cannot be had "through interrogatories, deposition of a designated [corporate] spokesperson, or deposition testimony of other persons." *Baine*, 141 F.R.D. at 334 (citing *Cmty. Fed. Sav. & Loan Ass'n v. FHLBB*, 96 F.R.D. 619, 621-22 (D.D.C. 1983)).  In short, "unique personal knowledge must be truly unique." *Id.*  Here, the fact that O'Connor's name appears on the first slide of a PowerPoint presentation does not establish that he has *unique* personal knowledge regarding the content of the presentation.  The first slide of the PowerPoint presentation also bears the name of DCP's Chief Financial Officer, Rose Robeson.  *PowerPoint Presentation* [#4-2] at 1.  If, as Plaintiff argues, a person whose name is listed on the first slide of a PowerPoint presentation should be deemed to know its content, then Ms. Robeson's knowledge of the content of the presentation here must be coextensive with O'Connor's knowledge of the same.  Accordingly, O'Connor cannot be said to have *truly unique* knowledge of anything contained in the presentation simply on the basis that his name appears on the first slide.

Moreover, O'Connor has sworn under penalty of perjury that he "did not draft any of the slides" in the PowerPoint presentation.  *Declaration of Thomas C. O'Connor Pursuant 28 U.S.C. § 1746* [Docket No. 1-4] at 3.  He explains that the presentation "was prepared by Kevin Powers, Senior Director of Planning in DCP's Denver headquarters office . . . for the purpose of a presentation to analysts and investors in Spectra Energy Corp." *Id.*

Finally, Plaintiff has only identified one statement in the PowerPoint presentation, i.e., the statement on page six of the presentation that "raw gas at the wellhead is not pipeline quality," from which it infers that O'Connor has unique personal knowledge that is relevant to the issues in the Oklahoma Case.  *Response* [#4] at 2.  "Isolated general

statements [made by an executive] do not defeat the application of the apex doctrine." *Serrano v. Cintas Corp.*, Nos. 04-40132, 06-12311, 2010 WL 2490775, at *3 (E.D. Mich. Jun. 10, 2011) (unreported decision). Plaintiff has not explained why it believes that page six of the presentation refers particularly to wellheads that are relevant to the Oklahoma Case as opposed to all wellheads serviced by DCP or all natural gas wellheads in general. Plaintiff also has not explained how a statement about raw gas quality at wellheads is connected to the issues in the Oklahoma Case. Aside from the PowerPoint presentation [#4-2], Plaintiff has offered no further evidence to show that O'Connor has unique personal knowledge of issues relevant to the Oklahoma Case. The Court therefore concludes that Plaintiff has not carried its initial burden. *See id.* (finding that a party seeking to depose an executive did not carry its initial burden to show that the executive had unique personal knowledge relevant to a claim of sex discrimination in hiring simply by showing that the executive made "a single, general statement encouraging [his company's] personnel to extend service sales representative [job] opportunities to female applicants").

Even if the PowerPoint presentation were considered to be an adequate initial showing that O'Connor has relevant unique personal knowledge, O'Connor has rebutted this showing and carried his ultimate burden of demonstrating by evidence that he in fact does not have such knowledge. O'Connor has submitted a Declaration [#1-4] in which he unequivocally disavows any unique personal knowledge of (1) the contracts at issue in the Oklahoma Case, and (2) DCP's corporate decision-making regarding entry into the contracts and the conduct of business pursuant to the contracts. Plaintiff argues that O'Connor's Declaration is not entitled to much weight in the Court's analysis because it is "vague" and "self serving." *Response* [#4] at 4. Moreover, Plaintiff argues that whether

O'Connor has "[d]irect knowledge of the contracts at issue" in the Oklahoma Case is inapposite. *Id.* at 5. Plaintiff asserts that the PowerPoint presentation demonstrates that O'Connor has "relevant knowledge as to documents or facts such as [DCP's] operations and policies which are alleged [in the Oklahoma Case] to be part of a general scheme which effects [sic] . . . payments to the royalty owners." *Id.*

The Court disagrees. O'Connor's Declaration has been sworn under penalty of perjury, and it is competent evidence that may properly be considered by the Court. *See Thomas*, 48 F.3d at 483 (relying on an executive's affidavit stating that he "lacked personal knowledge" when upholding the grant of a protective order preventing his deposition); *Serrano*, 2010 WL 2490775, at *2 (crediting an executive's statement in a declaration made under oath that he had "no personal knowledge of the facts surrounding [his company's] decision not to hire the 25 individual claimants" in a sex discrimination action). On balance, the Declaration [#1-4] is far more persuasive than Plaintiff's urging of an inference from the PowerPoint presentation [#4-2] that O'Connor has truly unique personal knowledge that is relevant to the issues in the Oklahoma Case. After carefully reviewing the PowerPoint presentation, the Court finds that it appears to be a marketing presentation intended to provide a general overview of DCP's business. Although the PowerPoint presentation may not be a public document, it is the sort of document that is commonly shared with business partners, industry groups, shareholders, potential investors, and potential clients. It is not the sort of document that contains sensitive or highly detailed information. Accordingly, the Court finds that nothing about the PowerPoint presentation suggests that O'Connor or any other specific person within DCP has truly unique personal knowledge of issues relevant to the Oklahoma Case. *Cf. Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *16

(N.D. Cal. May 9, 2011) (unreported decision) ("The mere fact that [a company's CEO] made public statements, even on issues that [the party seeking to depose him] considers relevant to its claims, is insufficient to justify his deposition. Courts have repeatedly denied apex depositions even on a showing that the executive made public statements on relevant issues." (citation omitted)). The Court concludes that O'Connor is entitled to a protective order precluding his deposition at this juncture.

Because the Court has determined that the substantive basis for issuing the Subpoena was inadequate, there is no need for the Court to address the parties' arguments regarding whether it was served in accordance with Fed. R. Civ. P. 45(b)(1) and 30(b)(1).

For the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#1] is **GRANTED**.

IT IS FURTHER **ORDERED** that the Subpoena [#1-1] is **QUASHED**.

Dated: June 27, 2011

                                      BY THE COURT:

                                      s/ Kristen L. Mix
                                      Kristen L. Mix
                                      United States Magistrate Judge